IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CURTIS SCOTT SMITH and | ) | Case No. 05-10041 |
| DONIA TROTTER SMITH, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| ———————————————————— | ) | |
| | ) | |
| RANDLE W. BENNETT, | ) | Adversary Proceeding |
| | ) | No. 05-2079 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CURTIS SCOTT SMITH and | ) | |
| DONIA TROTTER SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MEMORANDUM OPINION

This adversary proceeding came on before the Court on August 7, 2006, for hearing on motions to dismiss and cross motions for summary judgment. Jennifer F. Adams appeared on behalf of Curtis Scott Smith ("Mr. Smith") and Donia Trotter Smith ("Mrs. Smith")(collectively the "Smiths"), and Robert E. Price, Jr. appeared on behalf of Randle W. Bennett ("Bennett").

On June 7, 2005, Bennett filed the Complaint initiating this adversary proceeding. The Complaint challenges the dischargeability of certain debts of the Smiths to Bennett based on Section 523(a)(2)(A) and Section 523(a)(6) of the Bankruptcy Code. The debt grew out of two construction projects that Mr. Smith contracted to complete for Bennett, who obtained a judgment against the Smiths and Triple C Construction in a North Carolina state court.

1

On June 23, 2006, the Smiths each filed a Motion to Dismiss Adversary Proceeding or, in the Alternative, for Summary Judgment. The Smiths argue that the Complaint fails to state a claim against either of them. In the alternative, the Smiths argue that collateral estoppel does not apply to the facts of this case. Furthermore, they argue that the Complaint must be more specific as to their alleged misrepresentations. Lastly, the Smiths argue that they made no false representations nor did they willfully or maliciously intend any injury to Bennett.

On June 30, 2006, Bennett filed a Motion for Summary Judgment. Bennett argues that he is entitled to summary judgment based upon the application of res judicata and collateral estoppel to the state court judgment that he obtained against the Smiths. Even if the doctrines of res judicata and collateral estoppel do not apply, Bennett argues that he is entitled to summary judgment because Mr. Smith made representations that he knew to be false, Mr. Smith intended to deceive Bennett, and Bennett relied to his detriment on Mr. Smith's allegations. Lastly, Bennett argues that Mr. Smith willfully and maliciously injured him when Mr. Smith improperly completed the construction projects and failed to remedy several violations of the applicable building codes.

After consideration of the motions, the evidence presented at the hearing, the arguments of counsel, and the relevant law, the Court will (a) grant the motion of Mrs. Smith to dismiss the complaint against her for failure to state a claim; (b) deny the motion of Mr. Smith to dismiss the complaint against him for failure to state a claim; (c) deny the motion of Mr. Smith for summary judgment; and (d) grant in part and deny in part the motion of Bennett for summary judgment.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District

Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b), which this Court may hear and determine.

## II. FACTS

At all times pertinent to this case, Mr. Smith was in the construction business; he was a sole proprietor and did business as Triple C Construction.  The business was operated out of the Smiths' home.  Mrs. Smith was involved in the operation of the business, but the parties dispute whether she did any more than answer the telephone and assist her husband in the completion of paperwork.

Mr. Smith advertised his expertise in the construction of garages and sunrooms and generally held himself out as an experienced contractor.  Bennett contacted Mr. Smith about building a garage at his residence in King, North Carolina.  On October 11, 2002, Mr. Smith entered into an agreement with Bennett whereby Mr. Smith agreed to construct the garage for $23,900.00.  On January 15, 2003, Mr. Smith entered into an agreement with Bennett whereby Mr. Smith also agreed to construct a sunroom for $5,200.00.  Thereafter, construction of the garage began.

On May 1, 2003, James H. Kallum, a building inspector for Stokes County, North Carolina, inspected the garage[1] and concluded that it evidenced numerous violations of the state building code, which he eventually detailed in a letter to Mr. Smith, dated January 9, 2004 (the "Kallum Letter").  When faced with these violations, Mr. Smith told Bennett that he was following all building permit requirements, and he promised to take steps to bring the project into compliance with the building code.  Another inspection was done seven months later, and it uncovered further violations of the building code in both the garage and the sunroom.  Bennett requested that repairs be performed and that the construction be completed, but Mr. Smith did not complete the construction or make the

---

[1]Construction of the sunroom began after the May 1, 2003 inspection.

repairs in a manner that was satisfactory to Bennett, who employed a second contractor to finish both projects. Bennett paid Mr. Smith approximately $41,545.00 to construct the garage and sunroom, and he paid the second contractor $33,228.25 to complete the work.

On April 26, 2004, Bennett filed suit against the Smiths and Triple C Construction in the Superior Court of Stokes County, North Carolina (the "State Court"). The State Court complaint, which was verified, sought damages for breach of contract and for unfair and deceptive trade practices pursuant to North Carolina's Unfair and Deceptive Trade Practices Act (the "UTPA"). See N.C. Gen. Stat. § 75-1.1 et seq. On May 4, 2004, the Smiths and Triple C Construction were served with process, but they failed to file an answer or otherwise respond. On September 14, 2004, Bennett filed a motion for a default judgment and gave notice of the hearing on the Smiths. The State Court held a hearing on the motion, but the Smiths did not appear.

On October 15, 2004, the State Court entered a judgment against the Smiths and Triple C Construction by default in the amount of $99,684.75 (the "Default Judgment").[2] The Smiths did not appeal, and they have taken no action under state law to collaterally attack the Default Judgment. On January 6, 2005, the Smiths filed a chapter 7 bankruptcy.

## III. DISCUSSION

A. The Motions of the Smiths to Dismiss the Complaint for Failure to State a Claim

### 1. The Complaint

The Smiths aver that the Complaint in this adversary proceeding fails to state any claims

---

[2] Although the State Court awarded damages due to Mr. Smith's unfair and deceptive trade practices, the State Court made no express finding as to the breach of contact claim in the judgment, and the parties do not address the breach of contract claim in their briefs. Therefore, this opinion will focus on the cause of action for unfair and deceptive trade practices.

4

against them.  In this adversary proceeding, the Complaint is drafted in a way that makes it difficult to determine what, if any, allegations are made against Mrs. Smith.  In the first paragraph of the Complaint, it defines the Smiths collectively as "the Defendant."  In the fifth-numbered paragraph of the Complaint, Bennett alleges that he employed "the Defendant" to build a garage and sunroom. Attached to the Complaint is a copy of the Default Judgment against the Smiths.  In the sixth-numbered paragraph of the Complaint, Bennett alleges that "the Defendant held <u>himself</u> out to be an experienced contractor" (emphasis added), an allegation that clearly is directed at Mr. Smith alone.

In the seventh-numbered paragraph, Bennett refers to "the Defendant and <u>his</u> business," describes "the Defendant's numerous years in the contracting business," refers to "<u>his</u> stated expertise in the construction of garages and sunrooms," and describes how Bennett saw an example of "<u>his</u> work."  Complaint (emphasis added).  All of the allegations against the "Defendant" in this paragraph could only refer to Mr. Smith.

In numbered paragraphs eight and nine, Bennett again states that he contracted with "the Defendant," so the allegations in these paragraphs refer to the Smiths.

In numbered paragraph ten, Bennett alleges that

the Defendant provided [Bennett] with a substantial explanation and review of the improvements desired.  The Defendant continued to make representations to [Bennett] that <u>he</u> was very experienced in the contracting/construction business and that both garage [sic] proposed projects were well within <u>his</u> area of expertise.

Complaint (emphasis added).  The Court concludes that the allegations in paragraph ten only refer to Mr. Smith.  Numbered paragraph eleven again uses the pronoun "he," so the Court concludes that the allegations in that paragraph also refer to Mr. Smith alone.

Numbered paragraph twelve states that "the Defendant" began construction of the garage and

sunroom, and "the Defendant" represented that both projects were proceeding and "that <u>they</u> complied with all building codes."  Complaint (emphasis added).  Based on the use of the pronoun "they," the Court concludes that the allegations in this paragraph refer to both Smiths.

Numbered paragraph thirteen makes no allegations against the Smiths.  Numbered paragraphs fourteen through sixteen make allegations against "the Defendant" concerning building code violations, structural defects, and the employment by Bennett of a second contractor.  No pronouns are used in these paragraphs so the Court concludes that these allegations are against the Smiths.

Numbered paragraph seventeen refers to the State Court complaint against the Smiths and Triple C Construction.  Numbered paragraph eighteen refers to the default judgment obtained against the Smiths and Triple C Construction.

The first count in the Complaint, for breach of contract, is set forth in numbered paragraphs twenty through twenty-two.  These paragraphs make allegations about "the Debtor" and "the Defendant," but they use the pronoun "he" throughout.  The Court concludes that these allegations are against Mr. Smith only.

The second count in the Complaint, for unfair and deceptive trade practices, is set forth in numbered paragraph twenty-five.  This paragraph makes allegations about "the Debtor" and "the Defendant," but it uses the pronoun "he" and the possessive determiner "his."  The Court concludes that these allegations are against Mr. Smith only.

2.  The Standard of Review for Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[3] a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them.  Franklin v. Gwinnet County Public Schools, 911 F.2d 617, 619 (11th Cir. 1990)(facts of the complaint must be accepted as true and the allegations are to be favorably construed to the pleader).  A court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see In re Servico, 144 B.R. 557 (Bankr. S.D. Fla. 1992)(no complaint should be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief).  "As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief."  Wright & Miller, Federal Practice and Procedure vol. 5B § 1357 (3rd ed. West 2004); Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc., 699 F. Supp. 1158, 1161 (E.D.N.C. 1988).  The plaintiff's allegations are to be construed "liberally, because the rules require only general or 'notice' pleading, rather than detailed fact pleading."  J. Moore, Moore's Federal Practice, vol 2 § 12.34[1][b] (3rd ed. Matthew Bender 2004).

    3.  Analysis of Mrs. Smith's Motion to Dismiss

    As a general rule, when a court considers a motion to dismiss on the grounds of failure to state a cause of action, the court may only consider the matters on the face of the complaint.

---

[3]Fed. R. Civ. P. 12(b) - (h) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

Maryann Caton's of Alabama, Inc. v. United States, 792 F.2d 1565, 1567 (11th Cir. 1986); accord Harvey M. Jasper Retirement Trust v. Ivax Corp., 920 F. Supp. 1260, 1263 (S.D. Fla. 1995)(consideration of matters beyond the complaint is improper in the context of a motion to dismiss); Abbasi v. Herzfeld & Rubin, P.C., 863 F. Supp. 144, 146 (S.D.N.Y. 1994)(in deciding a motion to dismiss, the court must consider the legal sufficiency of the complaint, not the weight of evidence that might be offered at trial); Bharucha v. Reuters Holdings PLC, 810 F. Supp. 37, 40 (E.D.N.Y. 1993)(on a motion to dismiss, the court must limit its analysis to the four corners of the complaint).

Taken as a whole, the Complaint fails to state a claim against Mrs. Smith. The Complaint repeatedly alleges that Bennett contracted with both Smiths, but that allegation is contradicted by the two contracts attached to the complaint, which show that only Mr. Smith signed them.[4]  The Complaint alleges that only Mr. Smith held himself out to be an experienced contractor. It states that only Mr. Smith made statements to Bennett concerning his expertise and the manner in which the construction was proceeding. The Complaint alleges that both Smiths constructed the garage and the sunroom in an improper and substandard manner. It states that Bennett obtained the default judgment against both Smiths and Triple C Construction. Finally, the allegations in both counts of the Complaint are against Mr. Smith only. Since the only allegations in the Complaint against Mrs.

---

[4]The contracts are attached to the Complaint, so they are properly considered along with the Complaint.  See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)(although as a general rule extrinsic evidence should not be considered on a motion to dismiss for failure to state a claim, when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity).  Even if the Default Judgment, which is also attached to the Complaint, is considered, the Compliant fails to state a claim against Mrs. Smith. The Default Judgment simply incorporates the allegations of the State Court complaint, which alleges very little involvement by Mrs. Smith.

8

Smith were that she contracted with Bennett and improperly constructed the garage and sunroom, Bennett did not state a claim against her under Section 523 of the Bankruptcy Code. The motion to dismiss the Complaint against Mrs. Smith will be granted. Bennett will be given twenty days to file an amended complaint.

### 4.  Analysis of Mr. Smith's Motion to Dismiss

Mr. Smith avers that the Complaint also fails to state a claim against him. Although Mr. Smith acknowledges that a Section 523(a)(2)(A) complaint need not be elaborate and that Rule 8(a)(2) of the Federal Rules of Civil Procedure[5] requires that a pleading set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief," he contends that allegations of fraud must be more specific than those set forth in the Complaint. Mr. Smith cites Rule 9(b) of the Federal Rules of Civil Procedure,[6] which requires that all averments of fraud or mistake state the circumstances constituting the fraud or mistake with particularity. See, e.g., In re Herring, 191 B.R. 317, 320 (Bankr. E.D.N.C. 1995)(if a Section 523(a)(2)(A) complaint is based on actual fraud, then the allegations must be more specific than a mere assertion that the debtor did not have the ability or intention to repay the obligation); In re Shaver, No. 96-6005, slip op. at 4 (Bankr. M.D.N.C. May6, 1996)(case dismissed where complaint contained no specific allegations of the debtor's "actual fraud").

However, Bennett need not allege actual fraud by Mr. Smith. Section 523(a)(2)(A) provides that if the debtor obtained money, property, services, or an extension, renewal, or refinancing of

---

[5]Fed. R. Civ. P. 8 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7008(a).

[6]Fed. R. Civ. P. 9 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7009.

credit, by "false pretenses, a false representation, or actual fraud," then the debt is nondischargeable.[7]

Thus, in order for Bennett to prevail, the Complaint must simply allege that Mr. Smith obtained

money from Bennett by false pretenses, false representations, or actual fraud. The Complaint clearly

alleges that Mr. Smith made false representations[8] to Bennett concerning his expertise and abilities,

the actual cost to construct the garage and sunroom, the applicable permits and licenses,[9] and the

applicable building codes. The Complaint also alleges false pretenses[10] regarding Mr. Smith's

experience, expertise, and ability to make needed repairs. These allegations are sufficiently specific

to state a claim against Mr. Smith pursuant to Section 523(a)(2)(A).

Construing the Complaint most favorably to Bennett, it alleges that the failure of Mr. Smith

to properly construct the garage and sunroom constitutes a willful and malicious injury to Bennett.[11]

_____

[7]Section 523(a)(2)(A) requires the creditor to show that (1) the debtor made representations; (2) at the time of making the representations, the debtor knew that they were false; (3) the debtor made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained a loss as a result of that reliance. E.g., In re Showalter, 86 B.R. 877, 880 (Bankr. W.D. Va. 1988); In re Criswell, 52 B.R. 184, 196 (Bankr. E.D. Va. 1985).

[8]A "false representation" is an express misrepresentation. In re Sanchez, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002).

[9]Omissions or a failure to disclose on the part of the debtor can constitute false representations where omissions or the failure to disclose create a false impression that is known by the debtor. In re Booker, 165 B.R. 164, 169 (Bankr. M.D.N.C. 1994).

[10]"False pretenses" means implied misrepresentations or conduct intended to create and foster a false impression. E.g., In re Herwig, 77 B.R. 662, 664 (Bankr. S.D. Ill. 1987); In re Garthe, 58 B.R. 62, 64 (Bankr. M.D. Fla. 1986).

[11]Mere false representations cannot constitute an "injury" under Section 523(a)(6). See McCelvey v. Fulgham (In re Fulgham), 70 B.R. 168, 169 (Bankr. D.N.M. 1986)("This Court concludes that an 'intentional or deliberate injury' includes an intentional act which necessarily causes injury as well as an act performed with the specific intent to injure.")(emphasis added); 4 Collier on Bankruptcy ¶ 523.12[1] (15th ed. Rev. 2006)("By its terms, [523(a)(6)] may apply to a broad range of conduct causing harm to people or property.")(emphasis added). The Court has not

Such allegations, when coupled with the allegations in the rest of the Complaint, are sufficient to state a claim pursuant to Section 523(a)(6).[12] Thus, the motion to dismiss the Complaint against Mr. Smith will be denied.

## B.  The Motions of Mr. Smith and Bennett for Summary Judgment

### 1.  The Standard of Review for Summary Judgment

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure,[13] which provides that the moving party will prevail on a motion for summary judgment if "the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)(citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)); see In re Specialty Concepts, Inc., 108 B.R. 104 (W.D.N.C. 1989); In re Caucus Distribs., Inc. 83 B.R. 921 (Bankr. E.D. Va. 1988); see J. Moore, Moore's Federal Practice, § 56.13, p. 56-134 (3d ed. 1998)(movant must make a prima facie case for summary judgment by establishing (1) the

---

found any case in which representations alone have been sufficient to meet the "injury" requirement under Section 523(a)(6).

[12]Section 523(a)(6) requires the creditor to show that it has a property interest, see In re McAllister, 211 B.R. 976, 987 (Bankr. N.D. Ala. 1997), and that the property interest was actually injured, see In re Bundick, 303 B.R. 90, 104 (Bankr. E.D. Va. 2003).  The creditor must also show that the conduct of the defendant in injuring that property interest was both willful and malicious. See In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999).

[13]Fed. R. Civ. P. 56 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

apparent absence of any genuine dispute of material fact and (2) movant's entitlement to judgment as a matter of law on the basis of the undisputed facts). In determining whether the evidence is sufficient to establish the claim, the court must apply the substantive evidentiary standard that would be applicable at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1968).

In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Id; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.), cert. denied, 513 U.S. 813, 813 (1994).

The moving party has the initial burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable inferences must be drawn in favor of the nonmoving party. Celotex, 477 U.S. at 323; Liberty Lobby, 477 U.S. at 248. However, the existence of a factual dispute is material and precludes summary judgment only if the disputed fact is determinative of the outcome under applicable law. Liberty Lobby, Inc., 477 U.S. at 248; accord In re Crystal Apparel, Inc., 220 B.R. 816, 828 (Bankr. S.D.N.Y. 1998)("A fact is material only if it affects the results of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences.").

Once the moving party establishes that there is an absence of any genuine issue of material fact, then the burden shifts to the nonmoving party to present some evidence of a genuine issue of material fact. Liberty Lobby, Inc., 477 U.S. at 248. To meet its burden, the nonmoving party is required to present evidentiary support for every essential element of its case and upon which it bears the burden of proof at trial. Id. The nonmoving party must set forth the specific facts showing there is a genuine issue for trial. The nonmoving party is "entitled to have the credibility of its evidence as forecasted assumed, its version of all that is in dispute accepted, all internal conflicts

12

in it resolved favorably to it, the most favorable of possible alternative inferences from it drawn in its behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered."  M & M Medical Supplies & Service, Inc. v. Pleasant Valley Hosp. Inc., 981 F.2d 160, 163 (4th Cir. 1992), cert denied, 508 U.S. 972 (1993).  Only when the entire record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party can the court find there is no genuine issue for trial.  In re Trauger, 101 B.R. 378, 380 (Bankr. S. D. Fla. 1989)(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Harleysville Mut. Ins. Corp. v. Packer, 60 F3d. 1116, 1120 (4th Cir. 1995)(citing Beale v. Hardy, 769 F2d. 213, 214 (4th Cir. 1985)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Nguyen v. CNA Corp., 44 F3d. 234, 237 (4th Cir. 1995)(citing Matsushita, 475 U.S. at 587-88).

2.  The Motion of Mr. Smith for Summary Judgment

Mr. Smith avers that the allegations in the Complaint demonstrate that he breached his contracts with Bennett and engaged in "puffery" but that such acts do not rise to the level of "false pretenses, a false representation, or actual fraud" under Section 523(a)(2)(A).  Thus, Mr. Smith argues that he obtained no debt by false pretenses, false representations, or actual fraud.  However, Bennett's affidavit states that Mr. Smith told Bennett that he knew the state building codes and licensing requirements and would comply with the same when he built the garage and sunroom.  The affidavit also indicates that Bennett relied on Mr. Smith's statements.  There is ample evidence in the record to suggest that such statements were false; if so, they do not constitute mere puffery.  Mr.

Smith presented no evidence to contradict Bennett's affidavit, the Kallum Letter, and the other evidence presented by Bennett. Moreover, there are numerous material facts in controversy that prevent the grant of summary judgment for Mr. Smith. The motion by Mr. Smith for summary judgment will be denied.

### 3.  The Motion of Bennett for Summary Judgment

In support of his motion for summary judgment, Bennett makes three arguments.[14] First, Bennett argues that the application of the doctrine of res judicata to the Default Judgment and the Complaint precludes relitigation of his Section 523(a)(2)(A) cause of action. Second, if res judicata does not apply, then Bennett argues that the doctrine of collateral estoppel applies to preclude the relitigation of certain Section 523(a)(2)(A) issues. Third, even if res judicata and collateral estoppel do not apply, Bennett argues that he has proven the elements of Section 523(a)(2)(A) and (a)(6). These arguments will be examined in order.

### a.  The Application of Res Judicata to the Default Judgment and the Complaint

#### I.  Applicable Law

State judicial proceedings are entitled to the same full faith and credit in federal courts as they enjoy in the courts of the state from which they are taken. 28 U.S.C. § 1738. In determining the preclusive effect of a state court order or judgment, a federal court must look to the law of the state in which it was entered and give the order of judgment the same preclusive effect that it would receive in that state. In re Duncan, 448 F.3d 725, 728 (4th Cir. 2006); In re Heckert, 272 F.3d 253, 257-58 (4th Cir. 2001); In re Ansari, 113 F.3d 17, 19 (4th Cir. 1997); Spell v. Longenecker (In re

---

[14]Since Mrs. Smith's motion to dismiss will be granted, the Court will only address these arguments as they apply to Mr. Smith.

Longenecker), No. 05-10492, slip op. at 4 (Bankr. M.D.N.C. July 7, 2006)(2006 WL 2051846);

Merritt v. Dunston (In re Merritt), No. 99-81948, slip op. at 4 (Bankr. M.D.N.C. Aug. 30,

2001)(2001 WL 1699697)(citing Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S.

373, 380 (1985)).  While state law may dictate whether a state judgement should be given preclusive

effect in a dischargeability proceeding, the bankruptcy court decides whether the debt is in fact

dischargeable.  See 11 U.S.C. § 523(c)(1) (2006); In re Bozzano, 183 B.R. 735, 739 (Bankr.

M.D.N.C. 1995).

     The Fourth Circuit has applied full faith and credit principles to nondischargeability actions,

holding that collateral estoppel precludes a judgment debtor from relitigating issues in a bankruptcy

court that were actually litigated and necessary[15] to the state court judgment.  Combs v. Richardson,

838 F.2d 112, 113 (4th Cir. 1988).  The forum state's law of collateral estoppel must be applied by

---

[15]The Fourth Circuit has held that for a claim to have been "actually litigated and necessary," the defendant must have had knowledge of the previous state court action.  In re Raynor, 922 F.2d 1146, 1147 (4th Cir. 1991).  In Raynor, the debtor was sued in a North Carolina state court.  He engaged counsel to represent him and paid a retainer.  Id.  The debtor's counsel did not file a formal appearance or an answer.  Id.  The state court set the case for trial.  Id. Just before trial, the debtor's attorney tried to reach the debtor but was unable to do so.  Id.  On the day of trial, the debtor's attorney was allowed to withdraw, and a default judgment was entered against the debtor for, among other things, unfair and deceptive trade practices.  Id.  The trial court denied the debtor's motion for relief from the judgment and the North Carolina Court of Appeals affirmed.  Id.  The debtor filed for bankruptcy, and the creditor filed an adversary proceeding to determine whether the debt should be discharged.  Id.  The bankruptcy court determined that North Carolina law and bankruptcy law were similar with respect to the elements of fraud and the standard of proof and applied the doctrine of res judicata.  Id. at 1148.  The bankruptcy court entered summary judgment in favor of the creditor, which was affirmed by the district court but reversed by the Fourth Circuit.  Id.  Basing its decision on the fact that the debtor did not file a responsive pleading, had no knowledge of the trial, and did not appear at trial, the Fourth Circuit concluded that the matter was not actually litigated and necessary to the judgment.  Id. at 1149.  Raynor does not control the outcome of this case because Mr. Smith was served with Bennett's State Court lawsuit, which was verified, and he was given notice of Bennett's motion for a default judgment.  Mr. Smith had ample opportunity to participate in the case.

the federal court to determine the preclusive effect of a state court judgment under the full faith and credit dictates of 28 U.S.C. § 1738.  See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82 (1982).  However, this Court is not confined to a review of the Default Judgment and the record in the State Court action when determining whether res judicata applies to the dischargeability of Mr. Smith's debt to Bennett.  See Archer v. Warner, 538 U.S. 314, 320 (2003)("Claim preclusion did not prevent the Bankruptcy Court from looking beyond the record of the state-court proceeding and the documents that terminated that proceeding . . . in order to decide whether the debt at issue . . . was a debt for money obtained by fraud."); Brown v. Felsen, 442 U.S. 127, 138-139 (1979)(holding that the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceedings when determining whether res judicata applies to the dischargeability of a judgment debt).

### ii.  The Law of Res Judicata in North Carolina

Under the doctrine of res judicata in North Carolina, "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them."  Bockweg v. Anderson, 428 S.E.2d 157, 161 (N.C. 1993); see also In re Heckert, 272 F.3d at 258 ("Res judicata is applied to prevent the re-litigation of claims, and thus prevent the unsettling of a prior judgment, whether by increasing or decreasing the award or by reversing the result.").  For res judicata to apply, there must have been a prior adjudication on the merits of an action involving the same parties and issues as the action in which the defense of res judicata is asserted.  King v. Grindstaff, 200 S.E.2d 799, 804-805 (N.C. 1973).  See Sampson County Child Support Enforcement Agency ex rel. McNeill v. Stevens, 400 S.E.2d 776 (N.C. App. 1991) (holding that original paternity judgment was res judicata in later contempt proceedings where

16

a blood test was requested); <u>State ex rel. Hill v. Manning</u>, 431 S.E.2d 207 (N.C. App. 1993)(holding that it was error to allow defendant's motion to compel DNA testing to further establish paternity after paternity had been adjudicated; res judicata prohibited defendant from raising issue in subsequent hearings).

In North Carolina, the elements of res judicata are: "(1) a final judgment on the merits in an earlier lawsuit; (2) an identity of the cause of action in the prior suit and the later suit; and (3) an identity of parties or their privies in both suits." <u>Green v. Dixon</u>, 528 S.E.2d 51, 53 (N.C. App. 2000)(citing <u>Hogan v. Cone Mills Corp.</u>, 337 S.E.2d 477, 482 (N.C. 1985)). Res judicata prevents relitigation of "all matters . . . that were or should have been adjudicated in the prior action." <u>Whitacre P'ship v. Biosignia, Inc.</u>, 591 S.E.2d 870, 880 (N.C. 2004)(quoting <u>Thomas M. McInnis & Associates, Inc. v. Hall</u>, 349 S.E.2d 552 (N.C. 1986)). If North Carolina law concerning res judicata applies to the facts of this case, then this court need not relitigate a cause of action that has already been decided. <u>See</u> <u>In re Bebber</u>, 192 B.R. 120, 122 (W.D.N.C. 1995).

### iii.  The Application of Res Judicata to Default Judgments

North Carolina law is clear on the application of res judicata to default judgments. The North Carolina Supreme Court has held that a judgment is "res judicata of all points raised by the pleadings or which might properly be predicated upon them." <u>Steljes v. Simmons</u>, 86 S.E. 801, 803 (N.C. 1915). The <u>Steljis</u> court reached this conclusion even though the judgment was by default and the complaint was not verified. <u>Id</u>. In <u>Garrison ex rel. Chavis v. Barnes</u>, 450 S.E.2d 554, 557 (N.C. App. 1994), the North Carolina Court of Appeals considered the effect of res judicata on a default judgment in a paternity action. The court found that because the default judgment conclusively established the defendant's paternity, the defendant having failed to appeal the default judgment or

make a timely motion, res judicata barred the granting of the defendant's motion for blood testing. Id.

### iv.  The Application of Res Judicata to the Default Judgment

Under North Carolina law, the application of res judicata requires (1) a final judgment on the merits in an earlier lawsuit; (2) an identity of the cause of action in the prior suit and the later suit; and (3) an identity of parties or their privies in both suits.  E.g., Green v. Dixon, 528 S.E.2d at 53.  Two of these three requirements have been shown.  The Default Judgment is a final judgment on the merits.  The parties are the same in both the State Court action and this adversary proceeding.

The remaining requirement necessitates a comparison of the causes of action in the two cases.  In the State Court action, Bennett sued Mr. Smith for breach of contract and for unfair and deceptive trade practices under the UTPA.   In this adversary proceeding, Bennet seeks a determination that Mr. Smith's debt to him is nondischargeable pursuant to Sections 523(a)(2)(A) and (a)(6) of the Bankruptcy Code.  A review of the elements of these causes of action reveals that they cannot be construed to be the same for purposes of res judicata.

### A.  Nondischargeability Pursuant to Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides that a discharge does not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  To establish a prima facie case for an exception from discharge under Section 523(a)(6), a creditor must first show that it has a property interest that was capable of injury.  See McAllister, 211 B.R. at 987.  Of course, it must also be shown that the property interest was actually injured.  See

Bundick, 303 B.R. at 104. Second, the creditor must show that the conduct of the defendant in injuring that property interest was both willful and malicious; if both willfulness and maliciousness are not proven, the debt is dischargeable. See Scarborough, 171 F.3d at 641.

Section 523(a)(6) applies only to acts done with the actual intent to cause injury. In re Duncan, 448 F.3d 725, 729 (4th Cir. 2006). Negligent, grossly negligent, or reckless conduct does not satisfy the requirements. Id. Furthermore, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of Section 523(a)(6). Id. Nondischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to an injury. Duncan, 448 F.3d at 729; Spell v. Longenecker, No. 05-10492, slip op. at 4. The test under the willful and malicious injury exception to discharge requires a deliberate act in knowing disregard of a creditor's rights; therefore, it is the debtor's subjective state of mind that is relevant. In re Stanley, 66 F.3d 664, 668 (4th Cir. 1995). It does not matter that a reasonable debtor should have known that the act would adversely affect another's rights. Id.

The term "willful," for purposes of excepting a debt from discharge under Section 523(a)(6), means a deliberate or intentional act that is certain or substantially certain to cause injury. In re Markowitz, 190 F.3d 455, 464 (6th Cir. 1999); In re Miller, 156 F.3d 598, 603 (5th Cir. 1998); Stanley, 66 F.3d at 667; In re Adkins, 183 B.R. 702, 706 (Bankr. M.D.N.C. 1995). In 1998, the Supreme Court addressed what was necessary for a court to find an action "willful." See Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). The primary effect of Geiger was to hold that reckless and negligent conduct on the part of the debtor would no longer suffice to prevent discharge. In re Bundick, 303 B.R. at 106-07. "[T]he key to applying Geiger is to accurately

19

identify the creditor's true injury and to focus on that injury, as opposed to the resulting damage, when determining whether the injury was intentional." <u>Community Savings Bank, Inc. v. Rountree (In re Rountree)</u>, No. 00-12684C, slip op. at 6 (Bankr. M.D.N.C. May 1, 2002)(2002 WL 832669).


"Malice" does not mean the same thing for nondischargeability purposes as it often does in other contexts. <u>Stanley</u>, 66 F.3d at 667. A debtor may act with malice even though he bears no subjective ill will toward, and does not specifically intend to injure, the creditor. <u>Id</u>. The plaintiff is "not required to prove specific malice, spite, hatred, or ill-will." <u>Adkins</u>, 183 B.R. at 706. "An act done deliberately and intentionally in knowing disregard of the rights of another and without just cause or excuse, satisfies the requirements of malice under 523(a)(6)." <u>Rountree</u>, No. 00-12684C, slip op. at 8.

### B. Nondischargeability Pursuant to Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides that an individual debtor may not receive a discharge from any debt–

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). To establish the nondischargeability of a debt under Section 523(a)(2)(A), the plaintiff must prove: (1) that the debtor made representations; (2) that the representation was known to be false at the time it was made; (3) that such representation was made with the intent to deceive; (4) that the representation was relied on by the creditor; and (5) that the creditor sustained loss or damage as a proximal result of such false representation. <u>In re Rubin</u>, 875

20

F.2d 755, 759 (9th Cir. 1989); In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Kimzey, 761 F.2d 421, 423 (7th Cir. 1985); In re Simos, 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997); Adkins, 183 B.R. at 706; In re Booker, 165 B.R. 164, 168 (Bankr. M.D.N.C. 1994).

Section 523 must be strictly construed in favor of the debtor to fulfill the Congressional objective of the fresh start.  In re Hunt, 30 B.R. 425, 436 (M.D. Tenn. 1983); In re Davis, 246 B.R. 646, 652 (B.A.P. 9th. Cir. 2000).  If there is room for an inference of honest intent, the question must be decided in favor of the debtor.  Hunt, 30 B.R. at 436 (fraud must be affirmatively proved, not presumed); In re Trevisan, 300 B.R. 708, 717 (Bankr. E.D. Wis. 2003).

In order for a debtor's representation to be a "false representation" or "false pretense" under Section 523(a)(2)(A), it must have been (1) a knowing and fraudulent falsehood (2) describing past or current facts (3) that was relied upon by the other party.  In re Bryson, 187 B.R. 939, 958 (Bankr. N.D. Ill. 1995).  A "false representation" is an express misrepresentation.  In re Sanchez, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002).  A "false pretense" involves implied misrepresentation or conduct intended to create and foster a false impression when the truth is known by the debtor.  In re Bren, 284 B.R. 681, 692 (Bankr. D. Minn. 2002); Adkins, 183 B.R. at 706.  For Section 523(a)(2)(A) purposes, a misrepresentation may be found to be not only words spoken or written but also any other conduct that amounts to an assertion.  Bren, 284 B.R. at 693-94.  Omissions can amount to representations for purposes of nondischargeability, especially where the circumstances of the case create a false impression that is known by the debtor.  Booker, 165 B.R. at 169.

The intent element of Section 523(a)(2)(A) need not be shown by direct evidence but may be inferred from the totality of the circumstances; the court must consider whether the totality of the circumstances paints a picture of deceptive conduct by the debtor that indicates an intent to deceive

21

the creditor.  Davis, 246 B.R. at 652; In re Basham, 106 B.R. 453, 457 (Bankr. E.D. Va. 1989).  The court should consider the debtor's conduct at the time of the representations and may consider subsequent conduct to the extent that it provides an insight into the debtor's state of mind at the time of the representations.  Davis, 246 B.R. at 652; Basham, 106 B.R. at 457.

If a debtor is found to have obtained money or property by false pretenses, false representations, or actual fraud, then a creditor's reliance on the debtor's fraudulent misrepresentation must be justifiable but need not be reasonable.  Field v. Mans, 516 U.S. 59, 74-75 (1995); In re Peternel, 220 B.R. 923, 929 (Bankr. N.D. Ohio 1998)(justifiable reliance is a subjective standard that takes into account the qualities and characteristics of the particular creditor and the circumstances of the particular case).  Even though a creditor need only show justifiable reliance, the reasonableness of such reliance is still relevant and is a precursor for actual reliance.  Field v. Mans, 516 U.S. at 76.

### C.  Unfair and Deceptive Trade Practices Under the UTPA

The North Carolina Unfair and Deceptive Trade Practices Act declares as unlawful "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-1.1.  To prevail on such a claim, a party must show: (1) an unfair or deceptive act or practice, or an unfair method of competition (2) in or affecting commerce (3) which proximately caused actual injury to the party or to his business.  First Atlantic Management Corp. v. Dunlea Realty Co., 507 S.E.2d 56, 63 (N.C. App. 1998); Bozzano, 183 B.R. at 738.  An automobile buyer satisfied the "actual injury" and "proximate cause" requirements of an unfair and deceptive trade practice claim by showing that, based on assurances from a dealer, she unknowingly purchased a severely structurally damaged car that was not safe to operate.  Huff v.

22

Autos Unlimited, Inc., 477 S.E.2d 86, 89 (N.C. App. 1996).

In an action to recover under the UTPA, the jury is to decide whether the defendant has committed the acts complained of, and if the jury so finds, the trial court must determine as a matter of law whether those acts constitute unfair or deceptive practices. Durling v. King, 554 S.E.2d 1, 4 (N.C. App. 2001).

The UTPA does not list all of the circumstances or instances in which unfair or deceptive trade practices might be found. A court must determine from the circumstances of each particular case whether a violation has occurred. Bozzano, 183 B.R. at 738. A practice is "unfair," within meaning of the UTPA, when it offends established public policy or when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Id. The plaintiff need not show fraud, bad faith, or intentional misrepresentation. Id. A court need not resolve whether the defendant intended certain consequences or acted in good or bad faith; what is relevant is the impact on the marketplace and the consuming public. Abernathy v. Ralph Squires Realty Co., Inc., 285 S.E.2d 325, 327 (N.C. App.1982). The plaintiff must merely prove that the "act possessed the tendency or capacity to mislead, or created the likelihood of deception," not that he or she was actually deceived. Boyd v. Drum, 501 S.E.2d 91, 97 (N.C. App. 1998). Even a truthful statement may be considered deceptive. Chastain v. Wall, 337 S.E.2d 150, 154 (N.C. App. 1985).

A party is guilty of an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position. Edwards v. West, 495 S.E.2d 920, 924 (N.C. App. 1998). Furthermore, to show a "practice," the plaintiff must establish a series or pattern of acts. Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol, 893 F. Supp. 526, 539 (E.D.N.C. 1994).

23

"Proof of fraud . . . necessarily constitute[s] a violation of the prohibition against unfair and deceptive acts" under Section 75-1.1. <u>Hardy v. Toler</u>, 218 S.E.2d 342, 346 (N.C. 1975).[16] Yet, a mere breach of contract, even if intentional, is not an unfair and deceptive act; rather, a plaintiff must show substantial aggravating circumstances in addition to the breach to recover under the UTPA. <u>Ace Chemical Corp. v. DSI Transports, Inc.</u>, 446 S.E.2d 100, 106 (N.C. App. 1994).

v.  Conclusion

For several reasons, a determination by a state court that a party is liable for damages pursuant to a violation of the UTPA is not res judicata with regard to the nondischargeability of those damages pursuant to Section 523(a)(2)(A) or (a)(6) of the Bankruptcy Code.

Section 523(a)(6) requires a showing that the defendant willfully and maliciously caused injury to the plaintiff or his property, 11 U.S.C. § 523(a)(6),  which includes a showing that the defendant intended to cause the injury. <u>Duncan</u>, 448 F.3d at 729.  No such showings are required for a UTPA violation.  Under the UTPA, the act or practice complained of need not even be deceptive, and the plaintiff need not actually be deceived. <u>Boyd v. Drum</u>, 501 S.E.2d at 97 (plaintiff must merely prove that the "act possessed the tendency or capacity to mislead, or created the likelihood of deception").  No showing of bad faith, fraud, or intentional misrepresentation is necessary. <u>Bozzano</u>, 183 B.R. at 738.  Under the UTPA, truthful statements may be considered deceptive. <u>Chastain v. Wall</u>, 337 S.E.2d at 154.  No intent to cause injury need be shown. <u>Bozzano</u>,

---

[16]To establish a claim for fraud under North Carolina law, plaintiff must prove (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) which was relied upon and which resulted in damages to the injured party. <u>Forrest Drive Associates v. Wal-Mart Stores, Inc.</u>, 72 F. Supp. 2d 576, 586 (M.D.N.C. 1999).

183 B.R. at 738.  Merely a showing that an act possessed a tendency or capacity to mislead is enough.  Boyd v. Drum, 501 S.E.2d at 97.  The inequitable assertion of power or position can constitute a violation.  Edwards v. West, 495 S.E.2d at 924.

Section 523(a)(2)(A) requires a showing that the defendant obtained money, property, services, or an extension, renewal, or refinancing of credit, by false pretenses, a false representation, or actual fraud.  11 U.S.C. § 523(a)(2)(A).  It requires the plaintiff to show that the defendant made a representation, that he knew it was false, that he intended to deceive the plaintiff, that the plaintiff relied upon the misrepresentation, and that the proximate result was a loss or damage suffered by the plaintiff.  E.g., Simos, 209 B.R. at 191.  No such showings are required for a UTPA violation. While the facts of certain UTPA cases might satisfy some of the elements of Section 523(a)(2), see, e.g., Rucker v. Huffman, 392 S.E.2d 419, 422 (N.C. App. 1990)(builder represented to home buyer that there were small water problems with the lot and foundation but that he would fix it; water problem was significant and builder was unable to repair it on first attempt and refused further attempts); Allen v. Roberts Const. Co., Inc., 532 S.E.2d 534, 569 (N.C. App. 2000)(builder's principal concealed material facts relevant to owners' house from owners that he knew that owners could not discover in the exercise of due diligence and falsely represented to owners that their house had been constructed in substantial conformity with the house plans and specifications); Barbee v. Atlantic Marine Sales & Service, Inc., 446 S.E.2d 117, 121 (N.C. App. 1994)(boat manufacturer represented that boat would be covered by warranty and then, after boat was purchased, unreasonably refused to remedy major defect, which rendered boat useless), the facts of many other UTPA cases would satisfy none of those elements.

25

b.  The Application of Collateral Estoppel to the Default Judgment and
the Complaint

I.  The Law of Collateral Estoppel in North Carolina

Collateral estoppel or issue preclusion "is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." King v. Grindstaff, 200 S.E.2d at 805.  The doctrine of collateral estoppel precludes the relitigation of an issue when the issue has previously been litigated and judicially determined. State ex rel. Tucker v. Frinzi, 474 S.E.2d 127, 128 (N.C. 1996).  A party asserting collateral estoppel is required to show that (1) the issues are the same as those involved in the prior action; (2) the issues were raised and actually litigated in the prior action; (3) the issues were material and relevant to the disposition of the prior action: and (4) the determination of the issues in the prior action were necessary and essential to the resulting judgment. State v. Summers, 528 S.E.2d 17, 20 (N.C. 2000); Thomas M. McInnis & Associates, Inc., 349 S.E.2d at 557.

In North Carolina, the opportunity to litigate constitutes actual litigation for collateral estoppel purposes. Naddeo v. Allstate Ins. Co., 533 S.E.2d 501, 505-506 (N.C. App. 2000); see also Dallenback Racing, Inc. v. Oordt (In re Oordt), No. 04 B 16542, slip op. at 6 (Bankr. N.D. Ill. Dec. 16, 2004) (2004 WL 2915311)(applying North Carolina law of collateral estoppel).  The party opposing issue preclusion has the burden to show that there was not a full and fair opportunity to litigate the issues in the prior matter.  Miller Bldg. Corp. v. NBBJ N.C. Inc., 497 S.E.2d 433, 435 (N.C. App. 1998); see also Oordt, No. 04 B 16542, slip op. at 6.

The burden is on the party asserting issue preclusion to show "with clarity and certainty what was determined by the prior judgment."  Miller Bldg. Corp., 497 S.E.2d at 435 (citing Moore's

26

Federal Practice § 132.05[1]).  "It is not enough that the party introduce the decision of the prior court.  Rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."  Id.  It is important to note that "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."  Kremer, 456 U.S. at 481 (quoting Montana v. United States, 440 U.S. 147, 164 n.11 (1979)).

### ii.  The Application of Collateral Estoppel to Default Judgments

The Restatement of Judgments states that a default judgment does not operate as a collateral estoppel.  Restatement (Second) of Judgments § 27 (2006).  Federal law provides that a default judgment cannot be the basis for issue preclusion because no issues have actually been litigated. See United States v. Bailey, 957 F.2d 439, 443 (7th Cir.), cert. denied, 505 U.S. 1229 (1992); In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983); In re MacMillan, 579 F.2d 289, 292 (3rd Cir. 1978); United States v. Ringley, 750 F. Supp. 750, 759 (W.D. Va. 1990).  However, this Court is required to apply the North Carolina law of collateral estoppel to a default judgment entered by a North Carolina court.  E.g., Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82 (1982)(forum state's law of collateral estoppel must be applied by the federal court to determine the preclusive effect of a state court judgment under the full faith and credit clause of 28 U.S.C. § 1738); In re Heckert, 272 F.3d 253, 257-58 (4th Cir. 2001)(same); contra Thomas v. Petro-Wash, Inc., 429 F. Supp. 808, 813-14 (M.D.N.C. 1977)(applying federal law, court determined that state court default judgment had no collateral estoppel effect so as to bar the court from entertaining a cause of action based on an antitrust claim because "in a default judgment, no questions of fact are actually litigated").

27

In North Carolina, the opportunity to litigate constitutes actual litigation for collateral estoppel purposes.  Naddeo, 533 S.E.2d at 505-506.  In Naddeo, an insured obtained a default judgment against an insurance company.  The insurance company's motion to set aside the default judgment was denied.  Id.  The court applied collateral estoppel against the insurance company by finding that the default judgment was "binding upon the insurer as to issues which were or might have been litigated."  Id. at 506.  Even though the defendant in Naddeo failed to defend the previous lawsuit, there was an opportunity to do so, and, thus the plaintiff was allowed to invoke collateral estoppel.

In Reid v. Ayers, 531 S.E.2d 231, 233 (N.C. App. 2001), a homeowners' association sued a resident for recovery of a fee and was awarded a default judgment.  The resident later brought an action against the homeowners' association for breach of the North Carolina Fair Debt Collection Practices Act, and the homeowners' association asserted collateral estoppel.  Id. at 232-33.  The court stated that "even if the formal requirements of collateral estoppel have all been satisfied, we choose not to apply the doctrine of collateral estoppel in this situation because the issue before us is one of first impression."  Id. at 233.  Thus, the Reid court implied that collateral estoppel could apply to the underlying judgment even though it was a default judgment.

### iii.  The Application of Collateral Estoppel to the Default Judgment and the Complaint

As the Supreme Court stated in Brown v. Felsen, if the state court, while adjudicating the underlying state law question, determines a factual issue using standards that are identical to those in the Bankruptcy Code governing the dischargeability of debts, then collateral estoppel will bar relitigation of those same issues.  442 U.S. at 139 n.10.  Bennett has the burden to show "with clarity

28

and certainty what was determined by the prior judgment." <u>Miller Bldg. Corp.</u>, 497 S.E.2d at 435. At the August 7, 2006 hearing, Bennett introduced into evidence a portion of the State Court record, including the State Court complaint, the affidavit of James H. Kallum, the affidavit of Bennett, and the Default Judgment.  To determine if collateral estoppel applies, this Court must examine the findings and conclusions determined by the State Court and compare them with the Section 523(a)(2)(A) and (a)(6) issues that must be determined in this adversary proceeding.

The findings of fact and conclusions of law in the Default Judgment mainly concern procedural aspects of the State Court action.  However, paragraph 11 of the Default Judgment provides that "the allegations contained in the Plaintiff's Complaint are herein deemed admitted by the Defendant . . . and that entry of default has determined that said allegations are true."  In addition, paragraph 13 of the Default judgment provides that "the allegations in the Complaint in regards to the Defendants' unfair and deceptive trade practices are herein specifically admitted." Paragraph 4 on the last page of the Default Judgment concludes that Bennett's actual damages are $33,228.25 and that they should be trebled to $99,684.75 for "the Defendants' unfair and deceptive trade practices."  Thus, the allegations in the State Court complaint, which, pursuant to the Default Judgment, are admitted and accepted as fact by the State Court, must be examined.

The allegations in the State Court complaint may be summarized as follows:  Mr. Smith advertised his expertise in constructing garages and sunrooms and held himself out as an experienced contractor.  Mr. Smith was employed by Bennett to build a garage and sunroom at his home.  The parties contracted for Mr. Smith to build the garage for $23,900.00 and the sunroom for $5,200.00.  Mr. Smith continued to represent to Bennett that he was experienced in the construction trade and that garages and sunrooms were within his expertise.  Mr. Smith obtained a building

29

permit for the construction of the garage and began to build it.  James Kallum, a building inspector

for Stokes County, North Carolina, noted numerous building code violations in the construction of

the garage.  Bennett repeatedly requested that Mr. Smith remedy the problems that were noted by

Kallum, and Mr. Smith promised to do so.  Mr. Smith represented to Bennett that the projects were

going well and that he was following all building permit requirements.  Kallum conducted another

inspection, and it uncovered further building code violations in the construction of the garage and

the sunroom.  Bennett continued to ask for repairs to be done and for the construction to be

completed, but Mr. Smith failed to do so.  Bennett hired a second contractor to repair and finish the

projects.  Even though Bennett paid over $40,000 to Mr. Smith, he paid the second contractor an

additional $33,228.25 to remedy construction errors and to finish the projects.

In the State Court complaint, Bennett's first cause of action was that Mr. Smith breached the

contracts that he had with Bennett.  The second cause of action was that Mr. Smith's "actions"

constituted unfair and deceptive trade practices pursuant to the UTPA.  The second cause of action

includes the following statements: the "actions of the Defendants constitute an unfair and deceptive

trade practice."  The "acts of the Defendants have the capacity to deceive the Plaintiff and were, in

fact, unfair and deceptive and did deceive the Plaintiff."  The "Defendants promised . . . that the

inadequate and erroneous workmanship . . . would be remedied but no repairs or corrections were

actually made by the Defendants."  Finally, the "Defendants promised . . . that they would correct

said errors and violations in order to meet the building code, but the Defendants never followed

through with their promises to correct said violations and errors."

Pursuant to the Default Judgment, the allegations of the State Court complaint were admitted

by Mr. Smith and found as facts by the State Court.  But what issues in this adversary proceeding

30

have been precluded?

## A.  Section 523(a)(6) Issues

Section 523(a)(6) requires a creditor to first show that it has a property interest that was capable of injury, McAllister, 211 B.R. at 987, and that the property interest was actually injured, Bundick, 303 B.R. at 104.  In this case, the property interest that was injured was the additional $33,228.25 that Bennett spent to repair construction defects and to complete the work on the garage and sunroom.[17]  Mr. Smith is collaterally estopped from relitigating this issue.[18]

Section 523(a)(6) also requires a creditor to show that the conduct of the debtor in injuring his property interest was both willful and malicious.  Scarborough, 171 F.3d at 641.  This element requires a showing that the debtor deliberately or intentionally acted in knowing disregard of the creditor's rights.  Duncan, 448 F.3d at 729.  The record of the State Court proceedings does not establish that Mr. Smith acted with the knowledge that his actions were certain or substantially certain to cause injury to Bennett.  Collateral estoppel will not apply to this element of Section 523(a)(6).

## B.  Section 523(a)(2)(A) Issues

Section 523(a)(2)(A) requires a creditor to show (1) that the debtor made a representation;

---

[17]Although the State Court found Bennett's actual damages to be $33,228.25, the court trebled the damages, pursuant to the UTPA, for a total award of $99,684.75.  If Bennett is able to meet the requirements of Section 523 with regard to this debt, then the trebled damages would be nondischargeable.  Cohen v. de la Cruz, 523 U.S. 213, 218 (1998)(holding that not only were the plaintiff's compensatory damages excepted from discharge, but the trebled damages and the attorneys' fees as well because they were part of the plaintiff's statutory remedy).

[18]See  In re Heckert, 272 F.3d at 259 ("the amount of a state court judgment should not be altered in a bankruptcy dischargeability proceeding").

(2) that the representation was known to be false at the time it was made; (3) that such representation was made with the intent to deceive; (4) that the representation was relied on by the creditor; and (5) that the creditor sustained loss or damage as a proximal result of such false representation.  E.g., Rubin, 875 F.2d at 759; Simos, 209 B.R. at 191.

In this case, the record establishes that Mr. Smith made certain representations.  Mr. Smith advertised his expertise in constructing garages and sunrooms and held himself out as experienced contractor.  He represented to Bennett that he was experienced in the construction trade and that garages and sunrooms were within his expertise.  Mr. Smith told Bennett that he would remedy the construction problems that were noted by Kallum.  He also represented to Bennett that the projects were going well and that he was following all building permit requirements.  Mr. Smith is collaterally estopped from denying that he made such representations to Bennett.

The State Court record does not establish the second and third elements of Section 523(a)(2)(A).  There has been no showing that Mr. Smith's representations were known to be false at the time that they were made, nor has there been a showing that they were made with the intent to deceive Bennett.

The State Court record establishes the fourth element of Section 523(a)(2)(A).  One of the allegations in the State Court complaint, incorporated into the Default Judgment, was that the "acts of the Defendants . . . deceive[d] the Plaintiff."  Such a finding necessarily includes a finding that Bennett relied on Mr. Smiths representations.

The State Court record establishes that Bennett was injured by having to spend an additional $33,228.25 to repair construction defects and to complete the work on the garage and sunroom.  Although the record establishes that at least some of Mr. Smith's representations were false, the

record falls short of establishing that the additional $33,228.25 was spent by Bennett <u>as a proximal result of</u> such false representations.

iv.  Conclusion

Mr. Smith is collaterally estopped from relitigating the first element of Bennett's Section 523(a)(6) cause of action and the first and fourth elements of Bennett's Section 523(a)(2)(A) cause of action.  Collateral estoppel does not apply to any of the other elements of these two causes of action.

<u>c.  Material Facts in Controversy and a Lack of Evidence</u>

Bennett's third argument is that he has demonstrated the elements of Section 523(a)(2)(A) and (a)(6).  There are numerous material facts in controversy that prevent the grant of summary judgment on this basis.  For instance, the parties dispute the content and truthfulness of Mr. Smith's representations.  They dispute the terms of the written construction contracts.  They dispute whether mere statements of opinion by Mr. Smith can constitute false representations.  They dispute whether Mr. Smith told Bennett that he was not licensed and that no license was needed for the projects in question.  They dispute whether Mr. Smith's statements and actions were willful and malicious.  Moreover, even if Mr. Smith did not dispute certain factual allegations, the evidence adduced at the hearing was insufficient for Bennett to carry his burden with regard to his two causes of action.  Summary judgment will not be granted on this basis.

IV.  CONCLUSION

The Complaint failed to state a claim against Mrs. Smith, so her motion to dismiss will be granted.    Bennett will be given twenty days to file an amended complaint against her.  The

33

allegations in the Complaint are sufficient to state a claim against Mr. Smith pursuant to Section 523(a)(2)(A) and Section 523(a)(6), so his motion to dismiss will be denied.

There are numerous material facts in controversy that prevent the grant of summary judgment for Mr. Smith, so his motion will be denied.

The Default Judgment is a determination by the State Court that Mr. Smith is liable for damages due to his violation of the UTPA.  Such a finding is not res judicata with regard to the nondischargeability of those damages pursuant to Section 523(a)(2)(A) or (a)(6) of the Bankruptcy Code.  Mr. Smith is collaterally estopped from relitigating the first element of Bennett's Section 523(a)(6) cause of action and the first and fourth elements of Bennett's Section 523(a)(2)(A) cause of action.  However, collateral estoppel does not apply to any of the other elements of these two causes of action.  Thus, Bennett's motion for summary judgment will be granted in part and denied in part.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

## **<u>PARTIES IN INTEREST</u>**

Curtis Scott Smith

Donia Trotter Smith

Randle W. Bennett

Jennifer Adams

Robert E. Price, Jr.